NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOE HAND PROMOTIONS, INC.,** | Docket No.: 13-cv-7647 |
| Plaintiff, | |
| v. | **OPINION** |
| **JOSEPH CERRETO and CERRETO'S OLD WORLD LLC d/b/a THE GAME SPORTS BAR & GRILL,** | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff brings this action pursuant to the Communication Act of 1934, 47 U.S.C. § 605 and § 553, for unauthorized interception and broadcast of television programming. Plaintiff filed a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). Defendants did not oppose. For the reasons set forth below, the motion is hereby granted.

**I.    FACTUAL BACKGROUND**

Plaintiff Joe Hand Promotions, Inc. is a closed circuit distributor of sports and entertainment programming. (Plaintiff's Affidavit at ¶ 3, ECF No. 10-6). Plaintiff entered into a contract with non-party Zuffa LLC d/b/a Ultimate Fighting Championship. (Distributor Agreement, ECF No. 10-3). The contract granted Plaintiff the right to distribute UFC 147 Silva v. Franklin II, a television broadcast ("the Broadcast"), scheduled for June 23, 2012. (Complaint at ¶ 14). The Broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. (Complaint at ¶ 14).

Plaintiff entered into subsequent sublicense agreements with various entities that

own or operate commercial establishments in New Jersey, such as casinos, racetracks, restaurants, and nightclubs. (Plaintiff's Affidavit at ¶ 7). The sublicense agreements gave those entities permission to publicly exhibit the Broadcast to their patrons. (Complaint at ¶ 16). Plaintiff charged commercial customers a sublicense fee based on the maximum fire code capacity of the establishment. (Plaintiff's Affidavit at ¶ 7; *see also* Plaintiff's Rate Card, ECF No. 10-2).

The pirating of signals is a consistent problem for Plaintiff. (Plaintiff's Affidavit at ¶ 4). There are a number of methods that commercial entities can use to illegally obtain Plaintiff's broadcasts. (Plaintiff's Affidavit at ¶ 9). These include the use of devices such as "blackboxes" and "programming cards" and the purchase of illegal satellite authorization codes. (Plaintiff's Affidavit at ¶ 9). Plaintiff has a nationwide signal policing program to identify and prosecute "signal pirates." (Plaintiff's Affidavit at ¶ 5).

Plaintiff alleges that Defendants pirated the Broadcast. Defendants own and operate a commercial establishment called The Game Sports Bar & Grill in Nutley, New Jersey ('the bar"). Plaintiff's Investigator, Dino D'Elia, observed the Broadcast being played on 29 televisions for approximately 42 customers at the bar on June 23, 2012. (Affidavit of Dino D'Elia, ECF No. 10-5). The Defendants did not enter into a sublicense agreement with Plaintiff.

## II. PROCEDURAL BACKGROUND

Plaintiff commenced this action on December 18, 2013. (ECF No. 1). Plaintiff served the Summons and Complaint on Defendant Cerreto's Old World LLC on January 20, 2014. (ECF No. 4). Plaintiff served the Summons and Complaint on Defendant Joseph Cerreto on March 31, 2014. (ECF No. 5). The time for Defendants to answer or otherwise respond to the Complaint expired. *See* Fed. R. Civ. P. 12(a). To date, Defendants have failed to answer or otherwise respond to the Complaint. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered a default against Defendants on April 23, 2014. (ECF No. 7). Plaintiff filed the instant motion for default judgment on July 18, 2014 and served Defendants with notice of the motion on July 18, 2014. (ECF No. 10). No opposition has been filed.

## III. JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because Plaintiff brings this civil action pursuant to 47 U.S.C. § 553 and § 605. In addition, the court exercises personal jurisdiction over all named Defendants because they were physically located in the state of New Jersey at the time they were served with process in this matter. *See* Fed.R.Civ.P. 4(k)(1)(A); N.J. Ct. R. 4:4–4(a).

## IV. LEGAL STANDARD

The mere fact of default does not entitle Plaintiff to judgment. To enter a default judgment, the court must first determine whether a sufficient cause of action has been stated, taking as true the factual allegations of the Complaint. *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008). Once a cause of action has been established, the district courts must make explicit factual findings as to three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Joe Hand Promotions, Inc. v. Waldron*, CIV. 11-849 RBK/KMW, 2013 WL 1007398, at *4 (D.N.J. Mar. 13, 2013) (*citing Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Although the facts plead in the Complaint are accepted as true, Plaintiff must prove damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

## V. DISCUSSION

### A. Cause of Action

Both Section 553 and Section 605 penalize those who illegally intercept proprietary communications. In the Third Circuit, Section 553 applies when the interception occurs via a wire cable system, and Section 605 applies where the interception is wireless. *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 205 (2001). In cases like the instant, where the Defendants have failed to respond, the means of transmission is impossible to know, and therefore the appropriate cause of action is also unknown. *Joe Hand Promotions, Inc. v. Waldron*, CIV. 11-849 RBK/KMW, 2013 WL 1007398, at *1 n. 2 (D.N.J. Mar. 13, 2013). This dilemma has produced differing approaches among the district courts of the Third Circuit. *Compare Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at *1 n. 2 *with Joe Hand Promotions, Inc. v. Yakubets*, CIV.A. 12-4583, 2014 WL 960787, at *4 (E.D. Pa. Mar. 11, 2014). In this district, the common practice is to analyze the facts under both statutes and award a single sum under "either statute." *Waldron*, 2013 WL 1007398, at *1 n. 2 (*citing J & J Sports Prods., Inc. v. Perdomo*, No. 06-1374, 2007 WL 923522, at *2 (D.N.J. Mar. 26, 2007); *J & J Sports Prods., Inc. v. Edrington*, No. 10–3789, 2012 WL 525970, at *3 (D.N.J. Feb. 16, 2012)).

The Eastern District of Pennsylvania recently criticized this approach, not without good reason, as "enigmatic" and unprincipled. *See Joe Hand Promotions, Inc. v. Yakubets*, CIV.A. 12-4583, 2014 WL 960787, at *3 (E.D. Pa. Mar. 11, 2014). However, as discussed below, the liability and damages under either section would be identical in this case. For this reason, we will adhere to the traditional approach used by the courts of the District of New Jersey and leave the theoretical problems confronted in *Yakubets* for a

3

day when the difference is material.

Plaintiff has stated a claim under either Section 605 or Section 553. "When a plaintiff seeks relief under either 47 U.S.C. § 605 or 47 U.S.C. § 553 for the unauthorized interception and broadcast of television programming, its burden is to show that the defendant '(1) intercepted a broadcast; (2)[was] not authorized to intercept the broadcast; and (3) showed the broadcast to others.'" *Waldron*, 2013 WL 1007398, at *3 (*quoting J & J Sports Prods., Inc. v. Edrington*, No. 10–3789, 2012 WL 525970, at *2 (D.N.J. Feb. 16, 2012)).

Plaintiff alleges each of these elements. The Complaint alleges that Defendants intercepted the Broadcast and exhibited that Broadcast to their patrons. (*See* Complaint ¶¶ 13-30). These allegations suffice to establish the first and third elements of Plaintiff's claim. The Complaint also states that Plaintiff had been granted the right by contract "to distribute the UFC 147: Silva v. Franklin II Broadcast . . . via closed circuit television and via encrypted satellite signal." (*Id.* at ¶ 14). Plaintiff entered into sublicense agreements with "various entities of the State of New Jersey, allowing them to publicly exhibit the Broadcast to their patrons," but Defendants were not among those who entered such an agreement. (*Id.* at ¶¶ 15-18). Defendants used a technological modality to intercept the closed circuit satellite signal. (*Id.*). Based on the foregoing, Plaintiff has alleged facts that satisfy the second element of its claim. *Compare with Waldron*, 2013 WL 1007398, at *3. Plaintiff thus stated a cause of action under either Section 553 or Section 605.

### B. Factual Findings

Having established a cause of action, the court now makes factual findings as to: (1) whether the party subject to default has a litigable defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Waldron*, 2013 WL 1007398, at *4. First, there is no indication that Defendants have any defense to Plaintiff's allegations of unauthorized publication of communications. Thus, this factor is either inconclusive, or it weighs slightly in Plaintiff's favor. *See Hill v. Williamsport Police Dept.*, 69 Fed. App'x 49, 52 (3d Cir. 2003) ("Because the defendants had not yet filed an answer, the District Court was unable to evaluate whether they had a litigable defense, [rendering this] factor . . . inconclusive."). Second, Plaintiff suffers prejudice if it doesn't receive a default judgment because it has no alternative means of vindicating its claim against the defaulting parties. *Waldron*, 2013 WL 1007398, at * 4. Third, where, as here, Defendants have failed to respond, there is a presumption of culpability. *Id.* Thus, the three factors weigh in favor of entering default judgment.

4

### C. Damages

Rule 55(b)(2)(B) specifies that a "court may conduct hearings . . . when . . . it needs to . . . determine the amount of damages" owed a party upon an entry of default judgment. "The permissive language of the rule recognizes that such a proceeding will not be necessary in all circumstances, however, such as when 'damages are for a sum certain or for a sum which can by computation be made certain.'" *Waldron*, 2013 WL 1007398, at *4 (*quoting Joe Hand Promotions, Inc. v. Krist*, No. 12–783, 2012 WL 6628934 at *1 (W.D. Pa. Dec. 19, 2012)). In this case, "as Plaintiff seeks statutory damages, costs, and attorneys' fees, all of which can by computation be made certain," the court finds that it can award damages without a hearing. *Waldron*, 2013 WL 1007398, at *4.

Under either Section 553 or Section 605, a private party "aggrieved" by the unauthorized reception of communications may be awarded statutory damages. 47 U.S.C. § 553(c)(3)(A)(ii); 47 U.S.C. § 605(e)(3)(C)(i)(II). Under Section 553, these damages range from $250 to $10,000, while under Section 605, they range from $1,000 to $10,000. *Id.* The court chooses an amount within these ranges that it "considers just" under the circumstances. *Id.* In addition, if the unauthorized reception of the communications was done "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the court has discretion to award "enhanced damages," increasing the range to $50,000 in the case of Section 553 and $100,000 in the case of Section 605. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(ii); *see also Waldron*, 2013 WL 1007398, at *5.

Under both Sections 605(e)(3)(C)(i) and 553(c)(3)(A), the court can calculate damages via two alternate methods. Plaintiff may recover "actual damages" or "statutory damages . . . as the court considers just." 47 U.S.C. § 605(e)(3); 47 U.S.C. § 553(c)(3)(A). Where, as here, Defendants have not responded to the Complaint, and proof of actual damages is impossible, statutory damages "as the court considers just" are appropriate. *See Waldron*, 2013 WL 1007398, at *6; *J & J Sports Prods., Inc. v. Edrington*, No. 10–3789, 2012 WL 525970, at *3 (D.N.J. Feb. 16, 2012).

#### *1. Statutory Damages*

Plaintiff requests the maximum $10,000 in statutory damages and $50,000 in enhanced damages for willful conduct. Courts have taken many approaches in awarding statutory damages where a defendant illegally exhibits a closed-circuit broadcast but fails to answer the complaint. *Waldron*, 2013 WL 1007398, at *4; *Yakubets*, 2014 WL 960787, at *7-10. Two of the most recent cases in this district, *Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at *6 and *J & J Sports Prods., Inc. v. Edrington*, 2012 WL 525970, at *3 have both taken the position that the statutory damages should approximate the actual damages. The total sum, including both statutory and enhanced damages,

5

should be high enough to deter future violations and yet be just. *See Waldron*, 2013 WL 1007398, at *8.

Plaintiff argues that it was damaged in the form of a lost sublicense fee. The investigator estimated that the establishment had a capacity of 39 people, and according to Joe Hand's rate card, the sublicense fee for an establishment with a capacity of fifty or fewer people is $900. (ECF No. 10-2).

Second, Plaintiff also argues that it should be entitled to disgorge the profits earned from Defendants' sale of food and drink to customers who came to the bar for the Broadcast. Plaintiff offers no way to calculate how many of the patrons were there because of the Broadcast. Nor does Plaintiff offer a menu. Faced with a similar situation, a court in the Eastern District of Pennsylvania assumed that half of the patrons were there because of the pirated broadcast and that each ran up a total bill of $30 bill. *Joe Hand Promotions, Inc. v. Yakubets*, CIV.A. 12-4583, 2014 WL 960787, at *12 (E.D. Pa. Mar. 11, 2014). Since disgorgement of ill-gotten profits is just, we will follow the formula that the *Yakubets* court used to estimate the ill-gotten profits from sale of food and drink. In this case, there were about 40 patrons at the bar, so 20 x $30 = $600. Assuming a 25% profit margin, that comes to an estimate of $150 in ill-gotten profits.[1]

Third, Plaintiff argues that it should be awarded money for loss of goodwill and erosion of its business model. Plaintiff claims that when other establishments learn that Defendants received the Broadcast without paying for it, they are encouraged to do the same. Moreover, Plaintiff tells the businesses that do pay the sublicense fee where the other establishments playing the Broadcast are located. Signal pirates undermine the Plaintiff's representations to their paying customers. Signal pirates also discourage paying customers from repeating business because they are forced to compete with signal pirates. Plaintiff does not suggest any way to estimate the calculation of this loss. Under the circumstances, we consider it just to hold the Defendants accountable for discouraging one other similar establishment from contracting with Plaintiff and award an additional $900 for loss of goodwill and erosion of its business model. This brings the total statutory damages award to $1,950.

### 2. *Enhanced Damages*

Where the unauthorized reception of a broadcast was done "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the court has discretion to award "enhanced damages," increasing the range to $50,000 in the case of Section 553 and $100,000 in the case of Section 605. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(ii). To calculate enhanced damages, the courts in our district have

---

[1] In *Yakubets*, the court suggested that there was a profit margin to consider, and yet it decided not to take the profit margin into account. *See id.*, at *12. We consider it just to estimate a profit margin.

been applying five factors listed in *Kingvision Pay–Per–View Ltd. v. Rodriguez*, No. 02–7972, 2003 WL 548891 (S.D.N.Y. Feb. 24, 2003). *See Waldron*, 2013 WL 1007398, at *7; *Edrington*, 2012 WL 525970, at *3. The factors considered include: (1) whether the defendants have intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether they reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendants advertised their intent to broadcast the event; and (5) whether the defendants levied a cover charge or significant premiums on its food and drink because of the broadcast. *Waldron*, 2013 WL 1007398, at *7 (*citing Rodriguez*, 2003 WL 548891, at *2).

There is no evidence that Defendants had previously intercepted and exhibited unauthorized broadcasts. Further, the investigator reported that Defendants charged no cover fee and reported no premium on food or drink. There is no evidence of advertising of the event. As stated above, Plaintiff's actual loss appears to be the cost of the broadcast sublicense fee, which under the circumstances, would be $900. It appears that the bar was filled almost to capacity, playing the Broadcast on 29 televisions that the investigator described as "covering three of four walls." While the profits of such a small establishment may have been substantial for the establishment itself, there is simply a limit on how much profit a small sports bar can generate, even in one evening when it is filled to capacity. Thus, only one of the five factors weighs slightly in favor of enhanced damages.

Nevertheless, this is clearly a case where the interception was willful and for the purposes of private financial gain. We will therefore award $900 in enhanced damages. This award departs downward from the two most recent New Jersey cases, *Waldron*, 2013 WL 1007398, at *8 (awarding treble damages) and *Edrington*, 2012 WL 525970, at *3 (awarding double damages), however, we note that neither of these opinions awarded anything for lost goodwill. We consider a total award of $2,950 to be just and yet a sum sufficient to deter future violations of an establishment as small as the one at issue.

### D. Costs and Attorneys' Fees

Finally, Plaintiff seeks to recover costs and attorneys' fees related to this action. Both Sections 553 and 605 direct the court to award such relief to an aggrieved party who prevails on its claim. 47 U.S.C. §§ 553(c)(2)(C), 605(e)(3)(B)(iii) (providing for recovery of "full costs, including . . . reasonable attorneys' fees"). Plaintiff's counsel has submitted an affidavit detailing the costs and attorneys' fees incurred in the prosecution of this action. (Declaration of Ryan Janis). Such costs include $400 to file the lawsuit, $195 to effectuate service, and $1,500 in attorneys' fees, consisting of 6 hours of work at $250 per hour. The court is satisfied that these costs and fees are reasonable, and thus we will award Plaintiff the full amount requested.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is hereby granted. Judgment will be entered in the amount of $4,945, consisting of $1950 in statutory damages, $900 in enhanced damages, and $2,095 in fees and costs. An appropriate order and judgment follows.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 15, 2014**